1  JEFFER MANGELS BUTLER & MITCHELL LLP
   Gregory S. Cordrey (Bar No. 190144)
2  Joseph J. Mellema (Bar No. 248118)
3  3 Park Plaza, Suite 1100
   Irvine, CA 92614
4  Telephone: (949) 623-7200
   Facsimile: (949) 623-7202
5  Email: gcordrey@jmbm.com
   Email: jmellema@jmbm.com
6
7  Attorneys for Plaintiff
   *Electronics For Imaging, Inc.*
8

9            **UNITED STATES DISTRICT COURT**
10          **NORTHERN DISTRICT OF CALIFORNIA**
11

12 | **In re: RAH COLOR TECHNOLOGIES** | CASE NO. 3:18-MD-02874- SI
13 | **LLC PATENT LITIGATION**
   |                                   | **THIRD AMENDED COMPLAINT FOR**
14 |                                   | **DECLARATORY JUDGMENT AND**
   |                                   | **DEMAND FOR JURY TRIAL**
15 | This Document Relates to Case:
   |                                   | Judge Susan Illston
16 | 3:18-cv-07465-SI
17
18

19        Plaintiff Electronics for Imaging, Inc. ("EFI" or "Plaintiff"), for its claims against
20 Defendant RAH Color Technologies LLC ("RAH" or "Defendant") alleges as follows:
21                        **NATURE OF THE ACTION**
22        1.       Under Federal Circuit law, upstream manufacturers or suppliers of accused
23 products, like EFI, should be given the opportunity to defend its own technology and therewith its
24 customers. "[L]itigation . . . brought by the manufacturer of infringing goods takes precedence
25 over a suit by the patent owner against customers of the manufacturer." *See Katz v. Lear Siegler,*
26 *Inc.*, 909 F.2d 1459, 1464 (Fed. Cir. 1990); *see also In re Google Inc.*, 588 F. App'x 988, 990
27 (Fed. Cir. 2014). Because Defendant RAH repeatedly has sued EFI's customers for patent
28 infringement based on EFI products, EFI seeks declaratory judgment of non-infringement of U.S.

Patent Nos. 6,995,870 (the "'870 patent"), 7,729,008 (the "'008 patent"), 8,416,444 (the "'444 patent"), and 8,760,704 (the "'704 patent"; collectively with the '870, '008 and '444 patents, the "patents-in-suit").[1]

**PARTIES**

2.      EFI is a Delaware corporation with its principal place of business at 6750 Dumbarton Circle, Fremont, California 94555. EFI is a leader in the transformation from analog to digital imaging with scalable, digital, award-winning products. Based in Silicon Valley, California, EFI develops breakthrough technologies for the manufacturing of signage, packaging, textiles, ceramic tiles, and personalized documents, with a wide range of printers, inks, digital front ends, and a comprehensive business and production workflow suite.

3.      EFI is informed and believes that RAH is a limited liability company organized under the laws of the Commonwealth of Virginia with an office at 7012 Colgate Drive, Alexandria, Virginia 22307.

4.      EFI is informed and believes that RAH's business is directed to owning and enforcing in litigation the patents-in-suit throughout the United States, including in the Northern District of California. Upon information and belief, over the last several years, RAH has filed at least 14 patent infringement lawsuits against 20 or more defendants located throughout the United States. Upon information and belief, RAH does not itself manufacture, sell, offer for sale, or import any products or services, including any allegedly covered by the patents-in-suit.

**JURISDICTION AND VENUE**

5.      This is a civil action regarding allegations of patent infringement arising under the patent laws of the United States, Title 35 of the United States Code, in which EFI seeks declaratory relief under the Declaratory Judgment Act. Defendant RAH has accused and sued EFI's customers, alleging patent infringement based on their manufacture, use, sale, offer for sale, and importation of EFI's products.  EFI denies any infringement based on the manufacture, use,

---

[1] EFI has dropped its claim regarding U.S. Patent Nos. 7,312,897 (the "'897 patent") from its First Amended Complaint, though its mention remains in the complaint to provide background facts pertinent to this lawsuit.

SECOND AMENDED COMPLAINT FOR DECLARATORY JUDGMENT AND DEMAND FOR JURY TRIAL

1   sale, offer for sale, and importation of its products.  Thus, a substantial controversy exists between

2   EFI and RAH that is of sufficient immediacy and reality to empower the Court to issue a

3   declaratory judgment. *See Microsoft Corp. v. DataTern, Inc*., 755 F.3d 899, 903 (Fed. Cir. 2014);

4   *Arris Group, Inc. v. British Telecommunications PLC*, 639 F.3d 1368, 1375 (Fed. Cir. 2011). This

5   Court has jurisdiction over the subject matter of this declaratory judgment action under 28 U.S.C.

6   §§ 1331 and 1338(a), in that it involves claims arising under the United States Patent Act, 35

7   U.S.C. § 1 *et seq*.

8        6.     This Court may declare the rights and other legal relations of the parties pursuant to

9   28 U.S.C. §§ 2201 and 2202 because there is a case of actual controversy within the Court's

10  jurisdiction.

11       7.     On March 13, 2018, EFI filed suit in the Northern District of California.  Case No.

12  3:18-cv-01612, Dkt. 1. On May 7, 2018, EFI filed its First Amended Complaint. Dkt. 18. On May

13  21, 2018, RAH filed a motion to dismiss EFI's First Amended Complaint. Dkt. 21. On November

14  14, 2018, the Court transferred this case to the Eastern District of Virginia in lieu of a dismissal.

15  Dkt. 43.  Pursuant to a multidistrict litigation Transfer Order by the Judicial Panel on Multidistrict

16  Litigation entered on December 7, 2018, the Eastern District of Virginia transferred the case to

17  this district.  *See* Case Nos. 3:18-cv-7465-SI and 3:18-md-02874-SI.  On April 11, 2019, EFI filed

18  its Second Amended Complaint.  Dkt. 63.  On April 18, 2019, RAH filed a motion to dismiss

19  certain claims of EFI's Second Amended Complaint. Dkt. 64. On June 3, the Court granted in part

20  and denied in part RAH's motion. Dkt. 71.  At the same time, the Court granted EFI leave to

21  amend its complaint in light of the Court's ruling.  *Id*.  As detailed below, EFI provides additional

22  allegations regarding RAH's infringement contentions against EFI's customers, including that

23  such contentions allege that the limitations of the asserted claims are met by EFI's products and

24  that EFI's documents and training materials instruct its customers to use its products in a manner

25  that alleged infringes.  EFI denies that its products infringe or that it instructs its customers to use

26  EFI's products in a manner that infringes.

27       8.     This Court has both general and specific jurisdiction over RAH because it resides

28  in the Eastern District of Virginia.

SECOND AMENDED COMPLAINT FOR DECLARATORY JUDGMENT AND DEMAND FOR JURY TRIAL

JMBM | Jeffer Mangels
Butler & Mitchell LLP

9.      Venue is proper in this District under 28 U.S.C. §§1391(b) and (c).

## THE PATENTS-IN-SUIT

10.      United States Patent No. 6,995,870, entitled "System for Distributing and Controlling Color Reproduction at Multiple Sites" (the '870 Patent).  A true and correct copy of the '870 Patent is attached hereto as Exhibit A.  According to the '870 Patent, it discloses a system, method, and apparatus for distributing and controlling color reproduction at multiple sites. Claims 1-17, 19-32, 49-51 are directed to apparatus/user interface claims and claims 18, 33-48, 52-60 are directed to method claims.

11.      United States Patent No. 7,729,008, entitled "System for Distributing and Controlling Color Reproduction at Multiple Sites" (the '008 Patent).  A true and correct copy of the '008 Patent is attached hereto as Exhibit B.  According to the '008 Patent, it discloses a system, method, and apparatus for distributing and controlling color reproduction at multiple sites. Claims 1-27, 62-77 are directed to system claims, claims 28-42 are directed to method claims, and claims 43-61, 78-85 are directed to computer-readable medium claims.

12.      United States Patent No. 8,416,444, entitled "System for Distributing and Controlling Color Reproduction at Multiple Sites" (the '444 patent).  A true and correct copy of the '444 Patent is attached hereto as Exhibit C.  According to the '444 Patent, it discloses a system, method, and apparatus for distributing and controlling color reproduction at multiple sites. Claims 1-10, 34-73 are directed to apparatus/computer-readable medium claims, claims 29-33 are directed to method claims, and claims 11-28 are directed to system claims.

13.      United States Patent No. 8,760,704, entitled "System for Distributing and Controlling Color Reproduction at Multiple Sites" (the '704 Patent).  A true and correct copy of the '704 Patent is attached hereto as Exhibit D.  According to the '704 Patent, it discloses a system, method, and apparatus for distributing and controlling color reproduction at multiple sites. Claims 1-10, 29-42 are directed to system claims, claims 11-16, 22-28 are directed to apparatus claims, and claims 17-21 are directed to method claims.

14.      RAH has alleged that it is the owner by assignment of each of the patents-in-suit.

Jeffer Mangels
Butler & Mitchell LLP

JMBM

**BACKGROUND OF THE CONTROVERSY**

15.     RAH has directly accused EFI's products of infringing each of the patents-in-suit. EFI denies that the accused EFI products infringe the patents-in-suit.  RAH's express infringement allegations taken together with all the other circumstances, including that EFI makes, uses, sells, or offers to sell the accused print servers in the same manner that RAH accuses EFI's customers of infringement, provides a sufficient basis for EFI's declaratory relief claim.

16.     On information and belief, on August 22, 2014, RAH sent a letter to Konica Minolta indicating that it was using RAH's patented technology. In its letter, RAH identified, among other things, the '870, '008, and '704 patents as being relevant to certain Konica Minolta products purchased from EFI.

17.     After receiving a letter from RAH identifying products purchased from EFI that "relate to" RAH's U.S. patents, on September 17, 2014 Konica Minolta notified EFI and demanded that EFI defend, indemnify and hold harmless Konica Minolta regarding RAH's "[p]atent infringement claim[s]" based on Konica Minolta's purchase of EFI products.

18.     On information and belief, on October 20, 2014, RAH sent a letter to Ricoh Americas Corporation indicating that it was using RAH's patented technology.  In its letter, RAH identified, among other patents, the '870, '008, '444 and '704 patents as being relevant to certain Ricoh products purchased from EFI, including EFI Fiery Color/Print Controllers and Color Profiler Suite.

19.     On December 17, 2014, after receiving RAH's October 20, 2014 letter, Ricoh Company Ltd., parent company to Ricoh Americas Corporation, sent EFI a letter notifying EFI of RAH's claims.

20.     On September 17, 2015, RAH sued Ricoh Americas Corporation ("Ricoh") for patent infringement in the United States District Court for the Eastern District of Pennsylvania. Specifically, RAH alleged that "[a]ccurate color measurement and management is central to the products made, imported, used, sold, and/or offered for sale in the U.S. by Ricoh. These products include hardware, software, printers, and cameras that, alone or in combination, infringe various claims of the Patents-in-Suit." Case No. 15-cv-05203, Dkt. 1 [Complaint] at ¶ 22.  A true and

correct copy of the operative complaint RAH filed against Ricoh is attached as Exhibit E.

21.     In its complaint, among other things, RAH alleged that Ricoh's Pro C651EX, Pro C751 and Pro C751EXs, each having an EFI Fiery E-41A Controller and Color Profiler Suite, Ricoh Pro C901/C9O1s Graphic Arts with an EFI Fiery E-42 Print Controller and Color Profiler Suite, Ricoh Pro C901/C9O1s Graphic Arts with an EFI Fiery E-82 Print Controller and Color Profiler Suite, Ricoh Pro C5100s/C5110s, MP C8002, and MP C6502, each with an EFI Fiery E-22B Color Controller and Color Profiler Suite, Ricoh Pro C5100s/C5110s with an EFI Fiery E-42B Color Controller and Color Profiler Suite, Ricoh Pro C751 with an EFI Fiery E-41A Controller and Color Profiler Suite, Ricoh MP C6003, C5503, C4503, C3503, and C3003, each with an EFI Fiery E-22C Color Controller and Color Profiler Suite, infringe at least claims 19-22, 25-27, 33-36, 38-40, 42, 43, and 58-60 the '870 patent. *See RAH Color Technologies LLC v. Ricoh Americas Corporation,* Case No. 15-cv-05203, Dkt. 1 [Complaint], at ¶¶ 23-32 (E.D. Pa. Sep. 17, 2015).

22.     RAH further alleged that Ricoh's Pro C651EX, Pro C751 and Pro C751EXs, each having an EFI Fiery E-41A Controller and Color Profiler Suite, Ricoh Pro C901/C9O1s Graphic Arts with an EFI Fiery E-42 Print Controller and Color Profiler Suite, Ricoh Pro C901/C9O1s Graphic Arts with an EFI Fiery E-82 Print Controller and Color Profiler Suite, Ricoh Pro C5100s/C5110s, MP C8002, and MP C6502, each with an EFI Fiery E-22B Color Controller and Color Profiler Suite, Ricoh Pro C5100s/C5110s with an EFI Fiery E-42B Color Controller and Color Profiler Suite, Ricoh Pro C751 with an EFI Fiery E-41A Controller and Color Profiler Suite, Ricoh MP C6003, C5503, C4503, C3503, and C3003, each with an EFI Fiery E-22C Color Controller and Color Profiler Suite, infringe at least claims 28, 30-33, 35, 37, 39, 41, 43, 45-47, 49, 50, 52, 54, 56, 57, 60, 62, 64, 66, 73, and 75-77 of the '008 patent. Case No. 15-cv-05203, Dkt. 1 [Complaint] at ¶ 53-62.

23.     RAH further alleged that Ricoh's Pro C651EX, Pro C751 and Pro C751EX, each having an EFI Fiery E-41A Controller and Color Profiler Suite, Ricoh Pro C901/C9O1s Graphic Arts with an EFI Fiery E-42 Print Controller and Color Profiler Suite, Ricoh Pro C901/C9O1s Graphic Arts with an EFI Fiery E-82 Print Controller and Color Profiler Suite, Ricoh Pro

SECOND AMENDED COMPLAINT FOR DECLARATORY JUDGMENT AND DEMAND FOR JURY TRIAL

C5100s/C5110s, MP C8002, and MP C6502, each with an EFI Fiery E-22B Color Controller and Color Profiler Suite, Ricoh Pro C5100s/C5110s with an EFI Fiery E-42B Color Controller and Color Profiler Suite, Ricoh MP C6003, C5503, C4503, C3503, and C3003, each with an EFI Fiery E-22C Color Controller and Color Profiler Suite, infringe at least claims 11, 13, 20, 29-34, 36-38, 40-43, 45, 49-56, 58-60, and 63-72 of the '444 patent. Case No. 15-cv-05203, Dkt. 1 [Complaint] at ¶ 69-78.

24.     RAH further alleged that Ricoh's Pro C651EX, Pro C751, Pro C751 EX, each with Fiery E-41A Controller and Color Profiler Suite, Ricoh's Pro C901/C901s Graphic Arts with Fiery E-42 Print Controller and Color Profiler Suite, Ricoh's Pro C901/C90ls Graphic Arts with Fiery E-82 Print Controller and Color Profiler Suite, Ricoh Pro C5100s/C5110s with Fiery E-22B Color Controller and Color Profiler Suite, Ricoh's Pro C5100s/C5110s with Fiery E-42B Color Controller and Color Profiler Suite, Ricoh's MP C8002 and MP C6502 with Fiery E-22B Color Controller and Color Profiler Suite, Ricoh's MP C6003, MP C5503, MP C4503, MP C3503, MP C3003, each with Fiery E-22C Color Controller and Color Profiler Suite, Ricoh's Pro C651EX with Fiery E-41A Controller and Color Profiler Suite, infringe at least claims 11-18, 22, 27, 29, 30, 32, 34, 35, and 37-41 of the '704 patent. Case No. 15-cv-05203, Dkt. 1 [Complaint] at ¶ 79-88.

25.     On November 11, 2015, Ricoh Company Ltd. sent EFI a letter notifying EFI of RAH's patent infringement complaint against Ricoh Americas Corporation and attached a copy of the complaint.

26.     On June 30, 2017, RAH sued Quad/Graphics, Inc. ("Quad") for patent infringement in the United States District Court for the Northern District of Illinois. Specifically, RAH alleged that "QG has in the past and continues to directly infringe the asserted claims of the Patents-in-Suit pursuant to 35 U.S.C. § 271(a) by using methods and using, making and importing systems, software, and apparatuses covered by the asserted patent claims identified below." Case No. 18-cv-00087, Dkt. 1 [Complaint] at ¶ 39.  A true and correct copy of the complaint RAH filed against Quad is attached as Exhibit F.

27.     RAH alleged that Quad's use, manufacture, and importation of the "QG Accused Printer Servers," which RAH defined as including "EFI Fiery print servers, together with

1   Command Workstation and Color Profiler Suite, and other print servers and software" that have

2   the same functionality, infringe the '870 and '897 patents. *See RAH Color Technologies LLC v.*

3   *Quad/Graphics, Inc.,* Case No. 17-cv-04931, Dkt. 1 [Complaint], ¶¶ 41-111.

4          28.     On information and belief, RAH provided Quad with claim charts purportedly

5   demonstrating infringement of RAH patents. In the claim charts regarding the '870, '008 and '897

6   patents, RAH alleges that EFI products are central to RAH's infringement contentions, i.e.,

7   referring to "EFI" or "Fiery" products or product literature 84 times in 31 pages purportedly to

8   show that the claim limitations of asserted claims in the '870, '008 and '897 patents are found in

9   the accused EFI print servers and software.  For example, the claim chart for the '870 patent

10  alleges direct infringement by Quad based on its use of EFI's Fiery print server, Command

11  Workstation and Color Profiler Suite to satisfy every limitation of independent claim 34.  A true

12  and correct copy of the '870 claim chart is attached as Exhibit J.

13         29.     RAH's infringement allegations also cite to EFI-provided user guides and

14  documentation for each limitation of independent claim 34 that allegedly shows that EFI instructs

15  or encourages the use of its products in a manner that allegedly infringes.  For example, RAH

16  repeatedly refers to EFI documents describing the operation of its accused Fiery print server,

17  Command WorkStation and Color Profiler Suite, including reference to EFI's Digital Front Ends

18  ("DFEs") webpage identifying Fiery partners who sell Fiery® DFEs, including Ricoh, Sharp,

19  Toshiba, Xerox, and others, the Xerox® iGen® 5 Press product manual identifying the EX-P 5

20  Print Server, Powered by Fiery®, the Xerox® EXP 5 Print Server, Powered by Fiery® product

21  manual, an EFI-generated screenshot of EFI's Command Workstation, including the statement that

22  "The interface of Command WorkStation remains consistent regardless of print engine brand.

23  Source: Tips & Tricks for Fiery Command WorkStation, ~2:55, available at

24  https://www.youtube.com/watch?v=e8nmFmL0tzo", EFI's Fiery Command Workstation and

25  Fiery Color Profiler Suite, the Xerox® EX Print Server, Powered by Fiery® for the Xerox® Color

26  800/1000 Presses product manual, the Xerox® EX-P 1000i Print Server, Powered by Fiery® for

27  the Xerox® Color 800i/1000i Presses product manual, the Color Printing guide for the Xerox®

28  EX Print Server, Powered by Fiery® for the Xerox® Color 800/1000 Press, Color Handbook, and

JMBM | Jeffer Mangels Butler & Mitchell LLP

SECOND AMENDED COMPLAINT FOR DECLARATORY JUDGMENT AND DEMAND FOR JURY TRIAL

1   EFI's Fiery Color Reference for the Fiery®Color Server, all of which allegedly show the use of

2   EFI's products infringe claim 34 of the '870 patent.

3        30.     After receiving a copy of RAH's Complaint, on August 15, 2017 Quad notified EFI

4   and demanded that EFI defend, indemnify and hold harmless Quad regarding RAH's claims

5   regarding infringement of the '870 and '897 patents based on EFI products.  Quad included a copy

6   of RAH's Complaint.

7        31.     Following the transfer of RAH's complaint against Quad from the Northern District

8   of Illinois to the Eastern District of Wisconsin, on March 15, 2018, RAH filed a First Amended

9   Complaint ("RAH's FAC") in its lawsuit against Quad (the "Quad lawsuit"). *See RAH Color*

10  *Technologies LLC v. Quad/Graphics, Inc.,* Case No. 18-cv-00087, Dkt. 89 [Complaint] (E.D.

11  Wis.). RAH continued to allege that Quad's use, manufacture and importation of the "QG

12  Accused Printer Servers" (*see supra* ¶¶ 27-28) infringe the '870 and '897 patents. Case No. 18-cv-

13  00087, Dkt. 89 [Complaint] at ¶¶ 43-111. Further, RAH alleged that Quad's use, manufacture and

14  importation of "QG Accused Print Workflow Systems," which RAH defined as including "EFI

15  Fiery print server in combination with Command Workstation and Color Profiler Suite, and other

16  prepress workflow management systems that include the same or equivalent functionality,"

17  infringe method claims 17-18 of the '704 patent.  RAH's FAC alleges direct infringement by

18  Quad based on its use of EFI's Fiery print server, Command Workstation and Color Profiler Suite

19  to satisfy every limitation of independent claims 17 and 18.  *Id*. at ¶¶ 170-198.

20       32.     RAH also alleged that Quad's use, manufacture, and importation of "QG Accused

21  Color Managed Systems," which RAH defined as including "EFI Fiery print servers together with

22  Command Workstation and Color Profiler Suite, and other prepress workflow management

23  systems and color managed software that include the same or equivalent functionality," infringe

24  method claims 28-31, 33, 36, and 41 of the '008 patent. Case No. 18-cv-00087, Dkt. 89

25  [Complaint] at ¶¶ 112-198.  RAH's FAC alleges direct infringement by Quad based on its use of

26  EFI's products, including its Fiery print server, Command Workstation and Color Profiler Suite to

27  satisfy every limitation of independent claim 28.  *Id*.   The First Amended Complaint further

28  alleged that "[t]he Chicago Office has had at least . . . a Xerox Color C75 Press with EFI Fiery

JMBM | Jeffer Mangels
Butler & Mitchell LLP

Case No. 3:18-MD-02874-SI

SECOND AMENDED COMPLAINT FOR DECLARATORY JUDGMENT AND DEMAND FOR JURY TRIAL

1   print server in the past, and currently has a Xerox Color C60 Printer with EFI Fiery print server,

2   Command Workstation software, and Color Profiler Suite software. QG's Chicago Office also has

3   an EFI ES-2000 spectrophotometer." A true and correct copy of the operative complaint RAH

4   filed against Quad is attached as Exhibit G.

5        33.    Following a settlement agreement between Quad and RAH that disposed of each

6   and every claim in the Quad lawsuit, the court subsequently dismissed the Quad lawsuit on

7   November 29, 2018.

8        34.    On September 20, 2017, RAH sued Xerox Corporation ("Xerox") for patent

9   infringement in the United States District Court for the Northern District of Illinois. Specifically,

10   RAH alleged that "Xerox uses, makes, has made, sells, and offers to sell printer hardware and

11   software that employ color measurement and management techniques in the U.S. which, alone or

12   in combination, infringe various claims of the Patents-in-Suit." Case No. 17-cv-06813, Dkt. 1

13   [Complaint] at ¶¶ 44-45. A true and correct copy of the complaint RAH filed against Xerox is

14   attached as Exhibit H.

15        35.    RAH alleged that the "Xerox Accused Print Servers," which RAH defined as

16   including "EFI Fiery print servers (including, but not limited to the EX Print Server for Xerox

17   Color 560/570 Printers, Color 800/1000, Color C75, Color J75, iGen4, iGen 150, and 700i/700

18   Color Digital Press, and the EX-P 1000i Print Server for Xerox Color 800i/1000i Presses) together

19   with EFI's Command Workstation and/or Color Profiler Suite, and other print servers and

20   software" that have the same functionality, infringe claims 34, 39, and 43 of the '870 patent and

21   claims 28, 30, 31, 35, 37 and 39 of the '008 patent. *See RAH Color Technologies LLC v. Xerox*

22   *Corporation,* Case No. 17-cv-06813, Dkt. 1 [Complaint], ¶¶ 46-152.

23        36.    After receiving a copy of RAH's complaint, on October 2, 2017 Xerox notified EFI

24   and demanded that EFI defend, indemnify and hold harmless Xerox regarding RAH's claims

25   regarding infringement of the '870 and '008 patents based on products supplied by EFI.

26        37.    On February 23, 2018, RAH filed an amended complaint for patent infringement

27   against Xerox.  Case No. 17-cv-06813, Dkt. 21 [Amended Complaint].  The Amended Complaint

28   included the same infringement allegations that EFI's Fiery Print server together with EFI's

JMBM | Jeffer Mangels Butler & Mitchell LLP

Command Workstation and/or Color Profiler Suite infringed the '870 and '008 patents. *Id.*, ¶¶ 46-139. A true and correct copy of the operative complaint RAH filed against Xerox is attached as Exhibit I.

38.     On September 14, 2018, RAH served Final Infringement Contentions ("FIC") on Xerox identifying EFI products alleged to infringe the '870, '008, '444, and '704 patents.

39.     RAH accused the following EFI products of infringing the '870 patent: All Xerox printers and presses that are provided with EFI Fiery (EX) Print Server, Command WorkStation and/or Color Profiler Suite, including but not limited to, Xerox Color 560/570 Printers, Color 800/1000, Color C75, Color J75, iGen4, iGen 150, 700i/700 Color Digital Press, Color 800i/1000i, Versant family of presses.

40.     RAH accused the following EFI products of infringing the '008 patent: All Xerox printers and presses that are provided with EFI Fiery (EX) Print Server, Command WorkStation and/or Color Profiler Suite, including but not limited to, Xerox Color 560/570 Printers, Color 800/1000, Color C75, Color J75, iGen4, iGen 150, 700i/700 Color Digital Press, Color 800i/1000i, Versant family of presses.

41.     RAH accused the following EFI products of infringing the '444 patent: All Xerox printers and presses that are provided with EFI Fiery (EX) Print Server, Command WorkStation and/or Color Profiler Suite, Xerox Color 560/570 Printers, Color 800/1000, Color C75, Color J75, iGen4, iGen 150, 700i/700 Color Digital Press, Color 800i/1000i, Versant family of presses.

42.     RAH accused the following EFI products of infringing the '704 patent: All Xerox printers and presses that are provided with EFI Fiery (EX) Print Server, Command WorkStation and/or Color Profiler Suite, Xerox Color 560/570 Printers, Color 800/1000, Color C75, Color J75, iGen4, iGen 150, 700i/700 Color Digital Press, Color 800i/1000i, Versant family of presses.

43.     In its FIC served on Xerox, RAH provided Xerox with claim charts purportedly demonstrating infringement of RAH patents. In the claim charts regarding the '870 and '008 patents, RAH alleged that EFI products are central to RAH's infringement contentions, i.e., referring to "EFI" or "Fiery" products or product literature 69 times in 35 pages purportedly to show that the claim limitations of asserted claims in the '870 and '008 patents are found in the

accused EFI print servers and software.  For example, the claim chart for the '870 patent alleges direct infringement by Xerox based on its use of EFI's Fiery print server, Command Workstation and Color Profiler Suite to satisfy every limitation of independent claim 34 and dependent claims 39 and 43.  A true and correct copy of RAH's '870 claim chart is attached as Exhibit K.  The claim chart for the '008 patent alleges direct infringement by Xerox based on its use of EFI's Fiery print server, Command Workstation and Color Profiler Suite to satisfy every limitation of independent claim 28.  A true and correct copy of RAH's '008 claim chart is attached as Exhibit L.

44.    RAH's infringement allegations also cite to EFI-provided user guides and documentation for each limitation of independent claims 34 of the '870 patent and claim 28 of the '008 patent that allegedly shows that EFI instructs or encourages the use of its products in a manner that allegedly infringes.  For example, RAH repeatedly refers to EFI documents describing the operation of its accused Fiery print server, Command WorkStation and Color Profiler Suite, including EFI's Fiery Color Reference for the Fiery®Color Server, EFI's Fiery Color Profiler Suite, Fiery Command Workstation, Configuration and Setup guide for the Fiery®EX Print Server/Fiery®Controller for Xerox Color 550/560 Production Printer, Color Printing guide for the Fiery®EX Print Server/Fiery®Controller for Xerox Color 550/560 Production Printer, and the Color Printing guide for the Xerox EX Print Server, Powered by Fiery ® for the Xerox Color 800/1000 Press, all of which allegedly disclose that EFI instructs its customers to use its products in an allegedly infringing manner.

45.    In the claim charts regarding the '704 patent, RAH repeatedly alleges that EFI's Fiery/EX Print Server would infringe this patent: "This chart was prepared specifically for Xerox FreeFlow Core (On-Premise and Cloud), and applies to FreeFlow Core sold as a standalone product or sold as a packaged bundle with its printers and presses…to the extent that Xerox sells its printers and presses bundled with other print servers, including Xerox FreeFlow Print Server, **EFI Fiery/EX Print Server**, or Kodak/Creo CX Print Server, **these bundled systems would infringe this patent** in a similar fashion as set forth in this chart"; and "This chart was prepared specifically for the Xerox Versant 2100 Press with FreeFlow Print Server…to the extent that **EFI**

JMBM | Jeffer Mangels
Butler & Mitchell LLP

1   **Fiery print server (e.g., EX Print Server models)** and Kodak Creo CX print server are sold

2   instead of FFPS with Xerox printers and presses (e.g., **EFI Fiery (EX) Print Server** for Xerox

3   Versant 2100, Color J75, iGen4, iGen 150, Color 800/1000, Color 800i/1000i; Kodak CX Print

4   Server for Xerox iGen4, Color 800/1000), **these bundled systems would infringe this patent** in a

5   similar fashion as set forth in this chart."  (emphasis added).  The implication of RAH's statement

6   is that the identified EFI products allegedly satisfy the limitations of asserted claims of the '704

7   patent in the same manner depicted in the claim chart provided.

8       46.     In the claim charts regarding the '444 patent, RAH repeatedly alleges that EFI's

9   Fiery/EX Print Server would infringe this patent: "This chart was prepared specifically for the

10  Xerox DocuColor 8080 Digital Press with CX Print Server…to the extent that **EFI Fiery**

11  **controllers/print servers** (and bundled software) and Xerox FreeFlow Print Server (and bundled

12  software) are sold with Xerox printers and presses instead of CX Print Server, the **Fiery** and

13  Xerox **controllers/print servers would infringe this patent** in a similar fashion as set forth in

14  this chart (e.g., EX Print Server models for Xerox Color 560/570, Color 800/1000, Color C75,

15  Color J75, iGen4, iGen 150, 700i/700 Color Digital Press, Color 800i/1000i; FreeFlow Print

16  Server for Xerox Color 560/570, Color 800/1000, Color C75, Color J75, iGen4, iGen 150,

17  700i/700 Color Digital Press, Color 800i/1000i)"; "This chart was prepared specifically for Xerox

18  FreeFlow Core (On-Premise and Cloud), and applies to FreeFlow Core sold as a standalone

19  product or sold as a packaged bundle with its printers and presses…to the extent that Xerox sells

20  its printers and presses bundled with other print servers, including Xerox FreeFlow Print Server,

21  **EFI Fiery/EX Print Server**, or Kodak/Creo CX Print Server, **these bundled systems would**

22  **infringe this patent** in a similar fashion as set forth in this chart"; and "This chart was prepared

23  specifically for Xerox FreeFlow Core (On-Premise and Cloud), and applies to FreeFlow Core sold

24  as a standalone product or sold as a packaged bundle with its printers and presses…to the extent

25  that Xerox sells its printers and presses bundled with other print servers, including Xerox

26  FreeFlow Print Server, **EFI Fiery/EX Print Server**, or Kodak/Creo CX Print Server, **these**

27  **bundled systems would infringe this patent** in a similar fashion as set forth in this chart."

28  (emphasis added).  The implication of RAH's statement is that the identified EFI products

1   allegedly satisfy the limitations of asserted claims of the '444 patent in the same manner depicted

2   in the claim chart provided.

3        47.     In its FIC, in response to Local Patent Rule 2.2(h) of the Northern District of

4   Illinois, which requires that a patentee identify any products that it contends are covered by the

5   patents-in-suit and whether they are marked with the patents-in-suit, RAH identified products

6   from several licensees and stated that it "is unaware if [the listed] licensees mark their products."

7        48.     EFI has expended considerable effort and financial resources to design, develop,

8   manufacture and sell the accused Fiery print servers together with Command Workstation and

9   Color Profiler Suite.

10       49.     EFI has taken significant, concrete steps to manufacture and sell the accused Fiery

11  print servers together with Command Workstation and Color Profiler Suite RAH claims infringe

12  its patents.  In the course of developing and testing the accused Fiery print servers together with

13  Command Workstation and Color Profiler Suite, EFI used these accused products, including the

14  claimed methods accused by RAH against EFI's customers of infringing the patents-in-suit.  EFI

15  denies and disputes that its accused Fiery print servers together with Command Workstation and

16  Color Profiler Suite as well as any method of using them infringe the patents-in-suit.  EFI has

17  actually made and sold its accused Fiery print servers together with Command Workstation and

18  Color Profiler Suite into the U.S. market. Having devoted resources to bringing its Fiery print

19  servers to market, EFI fully intends to continue to sell its print servers. EFI has a legal right to sell

20  its print servers and an adjudication from this Court is needed so EFI can exercise that legal right

21  without risking an infringement claim from RAH.

22       50.     The history of patent litigation between RAH and EFI's customers, involving the

23  same products and patents, warrant the declaratory judgment relief sought by EFI. RAH's

24  accusations have put EFI in the position of either abandoning its accused Fiery print servers or

25  running the risk of being sued for infringement, which is precisely the type of situation that the

26  Declaratory Judgment Act was intended to remedy.

27       51.     An actual controversy exists between EFI and RAH regarding EFI's alleged

28  infringement of the RAH Patents. RAH has directly and specifically accused the EFI Fiery print

JMBM | Jeffer Mangels Butler & Mitchell LLP

server of infringing its patents. RAH's lawsuit against EFI's customers and each of the acts set forth above demonstrates RAH's intent to enforce its patents against EFI and its customers. RAH's affirmative accusations that EFI's products infringe the RAH Patents and EFI's denials necessarily create a case or controversy adequate to support declaratory judgment jurisdiction. RAH's affirmative acts of suing EFI's customers, particularly Xerox, have created a legal barrier to its business that EFI, through its declaratory judgment, seeks to eliminate.

52.     The parties' ongoing dispute can be adjudicated by this Court. The accused EFI Fiery print servers have been designed, manufactured, used, and sold. The dispute is real and substantial as evidenced by the numerous lawsuits filed by RAH against EFI's customers, including Xerox. The issues involved touch on the legal relations of EFI and RAH, parties having adverse legal interests concerning whether EFI can sell in the market without risking treble damages should the challenge eventually fail. The dispute is amenable to specific relief; the resolution of EFI's claims of non-infringement will conclusively determine the parties' competing legal claims. EFI's request for a finding of non-infringement is manifestly susceptible of judicial determination because it seeks an adjudication of present rights based upon established facts.

53.     RAH's affirmative accusations of infringement have had an immediate impact on EFI. RAH claims EFI's Fiery print servers infringe its patents, impacting EFI's current ability to sell its print servers. EFI has actually made and sold the accused print servers, has the capacity to sell print servers without delay, has inventory of print servers to sell, has potential customers for its print servers, and continues to make direct sales of its accused print servers into the United States. The passage of time will not change the parties' legal dispute because EFI will continue to make sales in the future, either to new or existing customers directly in to the U.S. market.

54.     EFI has been harmed by RAH's assertions that it infringes the RAH Patents. EFI has suffered financial harm to its business as a result of claims for indemnification made by its customers. Absent a judicial determination of non-infringement, EFI will continue to suffer financial harm because its sales are clouded by the legal dispute between EFI and RAH about whether EFI has the legal right to sell its accused print servers. EFI seeks a judicial determination that it has the legal right to sell the accused print servers without license or fear of being forced to

SECOND AMENDED COMPLAINT FOR DECLARATORY JUDGMENT AND DEMAND FOR JURY TRIAL

1  defend against RAH's claims of infringement.

2      55.   EFI's future sales will expose it to potential infringement liability and claims for

3  indemnification made by its customers. EFI will be forced to negotiate sales with potential

4  customers who may anticipate an infringement suit by RAH.  RAH's claims of infringement

5  substantially impact the financial terms upon which EFI can offer to make, use, sell, offer for sale

6  and import print servers into the U.S. market, impacting EFI's legal right to sell print servers. The

7  current harm to EFI and its business can be redressed by this declaratory judgment action.

8      56.   For all the foregoing reasons, RAH's continued accusations and threats create an

9  uncertainty concerning EFI's current and future business plans and an immediate and real

10  controversy now exists between EFI and RAH on all claims asserted herein. Based on the

11  foregoing, there is an actual, immediate and justiciable controversy between EFI and RAH as to

12  EFI's liability for direct infringement and inducing infringement of the '870, '008, '897, and '704

13  patents arising from the alleged acts of direct infringement by EFI and its customers' use,

14  manufacture, sale, offer to sell, and importation of EFI's products. *See Arris Group, Inc. v. British*

15  *Telecommunications PLC*, 639 F.3d 1368, 1375 (Fed. Cir. 2011); *Microsoft Corp. v. DataTern,*

16  *Inc.*, 755 F.3d 899, 903 (Fed. Cir. 2014).

17                    **FIRST CLAIM FOR RELIEF**

18    **(Declaratory Judgment of Noninfringement of U.S. Patent No. 6,995,870)**

19      57.   EFI repeats and realleges each and every allegation contained in the preceding

20  paragraphs above as if fully set forth herein.

21      58.   RAH has alleged, and continues to allege in connection with the Xerox action, that

22  the EFI Fiery (EX) Print Server, Command WorkStation and/or Color Profiler Suite that RAH

23  accused of infringement in its infringement contentions against Xerox ("Accused '870 Products")

24  infringe certain claims of the '870 patent. Because RAH's infringement allegations regarding the

25  Accused '870 Products are based on the use, manufacture, sale, offer for sale, and importation of

26  EFI's products by EFI's customers, including Xerox, RAH effectively has charged EFI with

27  infringement and there exists a controversy between RAH and EFI as to EFI's liability for direct

28  infringement and induced infringement based on the alleged acts of direct infringement by EFI's

JMBM | Jeffer Mangels
Butler & Mitchell LLP

1  customers.

2         59.     Based on EFI's alleged use of the standard International Color Consortium's

3  ("ICC") profiles, in the Xerox action RAH alleges that the Accused '870 Products infringe

4  independent claim 34, and dependent claims 39 and 43 (which depend from claim 34), of the '870

5  patent. For example, RAH alleges that the claim limitation of "providing information for

6  transforming input color image data into output color image data for the color input or output

7  devices at said plurality of sites such that colors produced by the color devices appear substantially

8  the same within colors attainable by each of the devices, wherein said information for

9  transforming comprises information relating the color gamuts of different ones of said color

10  devices to each other and user preferences for color reproduction for at least one of the color

11  devices" of claim 34 reads on the Accused '870 Products.

12         60.     Specifically, RAH alleges that the Accused '870 Products are compliant with ICC

13  Version 4.0 profiles, which RAH alleges requires use of the ICC-defined perceptual intent

14  reference medium gamut ("PRMG").  RAH further alleges that the PRMG provides a standardized

15  gamut representation for image data in coordinates which are used to map colors from an input

16  device to output devices using an intermediate color to color transformation. Upon information

17  and belief, RAH alleges that the ICC effectively standardized the '870 patent's gamut descriptor.

18  Thus, RAH alleges that the claim limitation "providing information for transforming input color

19  image data into output color image data for the color input or output devices at said plurality of

20  sites such that colors produced by the color devices appear substantially the same within colors

21  attainable by each of the devices, wherein said information for transforming comprises

22  information relating the color gamuts of different ones of said color devices to each other and user

23  preferences for color reproduction for at least one of the color devices" reads on the Accused '870

24  Products, in part, because of EFI's compliance with ICC Version 4.0 profiles.  As such, RAH

25  alleges that the Accused '870 Products infringe claims 34, 39, and 43 of the '870 patent

26  (collectively, "the Asserted '870 Claims").

27         61.     RAH's infringement claims are unfounded.  By way of non-limiting example,

28  Version 4.0 of the ICC Specification does not even mention PRMG. Further, Version 4.3 of the

SECOND AMENDED COMPLAINT FOR DECLARATORY JUDGMENT AND DEMAND FOR JURY TRIAL

ICC Specification does not require PRMG. In Version 4.3, the ICC Specification states, under "6.3.3.1 General," that "Perceptual rendering remains a proprietary art, due both to the current state of perceptual rendering algorithms, and also to the fact that viewer and application specific preferences can affect the nature of a desired reproduction (when exact colour matching is not the objective).  It is not practical or desirable to specify standard perceptual rendering algorithms. Consequently, it is also not practical or desirable to require that perceptual rendering intents match an exact perceptual intent reference medium gamut (PRMG)." Further, the ICC Specification Version 4.3 states, under "6.3.3.3 Perceptual intent reference medium gamut (PRMG)," that "Perceptual rendering intent and saturation rendering intent transforms may *optionally* use the reflection color gamut specified in ISO 12640-3 . . . ."  (emphasis added).  Thus, even if RAH's unsupported allegation that using PRMG meets the Asserted '870 Claims' requirement of using a standardized color gamut is correct, it does not follow that the Accused '870 Products' conformity with ICC Version 4.0 (or Version 4.3) profiles necessarily establishes infringement of the '870 patent, as the use of PRMG is optional. In fact, the Accused '870 Products do not implement PRMG, as RAH's infringement allegations incorrectly assume.  Accordingly, RAH's infringement allegations are demonstrably wrong and, for at least this reason, the Accused '870 Products do not infringe the Asserted '870 Claims as RAH alleges.

62.     Accordingly, an actual and justiciable controversy exists between EFI and RAH as to EFI's non-infringement of the '870 patent.

63.     Pursuant to the Declaratory Judgment Act, 28 U.S.C. §§2201, *et seq*. and to resolve the legal and factual questions raised by RAH and to afford EFI and its customers relief from uncertainty and controversy which RAH's infringement accusations have precipitated, EFI is entitled to a declaration that the Accused '870 Products do not infringe the '870 patent.

**SECOND CLAIM FOR RELIEF**

**(Declaratory Judgment of Noninfringement of U.S. Patent No. 7,729,008)**

64.     EFI repeats and realleges each and every allegation contained in the preceding paragraphs above as if fully set forth herein.

65.     RAH has alleged, and continues to allege in connection with the Xerox action, that

JMBM | Jeffer Mangels Butler & Mitchell LLP

the EFI Fiery (EX) Print Server, Command WorkStation and/or Color Profiler Suite that RAH

accused of infringement in its infringement contentions against Xerox ("Accused '008 Products")

infringe certain claims of the '008 patent. Because RAH's infringement allegations regarding the

Accused '008 Products are based on the use, manufacture, sale, offer for sale, and importation of

EFI's products by EFI's customers, including Xerox, RAH effectively has charged EFI with

infringement and there exists a controversy between RAH and EFI as to EFI's liability for direct

infringement and induced infringement based on the alleged acts of direct infringement by EFI's

customers.

66.     Based on its characterization of EFI's devices and reference to EFI's Command

Workstation, in the Xerox action RAH alleges that the Accused '008 Products infringe

independent claim 28, and dependent claims 29-31, 33, 35-37, 39, and 41 (which depend from

claim 28) (collectively, "the Asserted '008 Claims"). For example, RAH alleges that the claim

limitation of "storing in memory at least tonal transfer curves for a plurality of color channels,

color image data, and one or more color transformations for converting a first set of color

coordinates into a second set of coordinates wherein said tonal transfer curves and said one or

more color transformations are at least partly in accordance with calibration data in device-

independent units of color and are useable in combination to control rendering of said color image

data, and at least one of said one or more color transformations is a chromatic adaptation

transform useable to compensate for change in viewing conditions" of claim 28 reads on the

Accused '008 Products.

67.     Specifically, RAH alleges that the Accused '008 Products used to make calibration

measurements allegedly generate color values using device-independent color units, such as L*a*b

or CIEXYZ color units or density units. RAH further alleges that EFI's Command Workstation

supports ICC Specification Version 4.0, which utilizes standardized ICC color profiles, and

thereby implies that the Accused '008 Products allegedly perform calibration using standardized

color profiles. Thus, RAH alleges that the claim limitation "calibration data in device-independent

units of color" reads on EFI's Version 4.0-compliant technology and therefore infringes the

Asserted '008 Claims.

JMBM | Jeffer Mangels Butler & Mitchell LLP

68.     RAH's infringement claims are unfounded. By way of non-limiting example, in contrast to the claimed method of the Asserted '008 Claims, which requires using "calibration data in device-independent units of color," EFI utilizes Adobe Systems, Inc.'s PostScript for defining its color spaces which specifies that color transformations for conducting calibration utilize device-dependent units of color. Further, EFI's Command Workstation shows measurement results as a set of density curves for C, M, Y, and K in connection with calibration.  The CMYK color space and associated density curves are *not* device-independent units of color, much less the device-independent units of color identified by RAH. Therefore, for at least this reason, the Accused '008 Products do not infringe the Asserted '008 Claims.

69.     Further, claim 28 recites that "one or more color transformations" are required "for converting a first set of color coordinates into a second set of coordinates" and "at least partly in accordance with calibration data in device-independent units of color." The Accused '008 Products do not include such color transformations. Rather, the Accused '008 Products convert a first set of color coordinates into a second set of color coordinates separately and independently of the calibration data, which (as noted above) is not in device-independent units of color.

70.     Accordingly, for at least this additional reason, the Accused '008 Products do not infringe the Asserted '008 Claims as RAH alleges.

71.     Accordingly, an actual and justiciable controversy exists between EFI and RAH as to EFI's non-infringement of the '008 patent.

72.     Pursuant to the Declaratory Judgment Act, 28 U.S.C. §§2201, *et seq*. and to resolve the legal and factual questions raised by RAH and to afford EFI and its customers relief from uncertainty and controversy which RAH's infringement accusations have precipitated, EFI is entitled to a declaration that the Accused '008 Products do not infringe the '008 patent.

**THIRD CLAIM FOR RELIEF**

**(Declaratory Judgment of Noninfringement of U.S. Patent No. 8,416,444)**

73.     EFI repeats and realleges each and every allegation contained in the preceding paragraphs above as if fully set forth herein.

74.     RAH has alleged, and continues to allege in connection with the Xerox action, that

JMBM | Jeffer Mangels
Butler & Mitchell LLP

EFI Fiery (EX) Print Server, Command WorkStation and/or Color Profiler Suite that RAH accused of infringement in its infringement contentions against Xerox ("the Accused '444 Products") infringe certain claims of the '444 patent. Because RAH's infringement allegations regarding the Accused '444 Products are based on the use, manufacture, sale, offer for sale, and importation of EFI's products by EFI's customers, including Xerox, RAH effectively has charged EFI with infringement and there exists a controversy between RAH and EFI as to EFI's liability for direct infringement and induced infringement based on the alleged acts of direct infringement by EFI's customers.

75.    Based on EFI's alleged use of the standard ICC profiles, in the Xerox action RAH alleges that the Accused '444 Products infringe independent claim 11 and 41, and dependent claims 15, 20, and 42 (which depend from claims 11 or 41), of the '444 patent (collectively with claims 11 and 41, the "Asserted '444 Claims"). As described above, RAH alleges that "to the extent that EFI Fiery controllers/print servers (and bundled software) and Xerox FreeFlow Print Server (and bundled software) are sold with Xerox printers and presses instead of CX Print Server, the Fiery and Xerox controllers/print servers would infringe this patent in a similar fashion as set forth in this chart (e.g., EX Print Server models for Xerox Color 560/570, Color 800/1000, Color C75, Color J75, iGen4, iGen 150, 700i/700 Color Digital Press, Color 800i/1000i; FreeFlow Print Server for Xerox Color 560/570, Color 800/1000, Color C75, Color J75, iGen4, iGen 150, 700i/700 Color Digital Press, Color 800i/1000i). Accordingly, RAH alleges that EFI's Fiery controllers/print servers, in connection with the sale of Xerox printers and presses, infringe for the same reasons described for the CX Print Server.

76.    Thus, for example, RAH alleges that "a chromatic adaptation transform stored in a file and accessible through a file header, said chromatic adaptation transform enabling conversion of input color coordinates to output color coordinates representative of different viewing conditions" of claim 11 reads on the Accused '444 Products. In addition, for example, RAH alleges that "wherein said information stored by said memory further comprises a gamut descriptor data structure, said gamut descriptor representing a two dimensional array whose inputs are coordinates related to lightness and hue and whose outputs represent the saturation at the

Jeffer Mangels
Butler & Mitchell LLP

JMBM

surface of a color gamut at said input coordinates" of claim 15 (a dependent claim of claim 11) reads on the Accused '444 Products.

77.     Specifically, RAH alleges that the Accused '444 Products are compliant with ICC Version 4.0 profiles, which RAH alleges requires use of the ICC-defined chromatic adaptation transform (i.e., "chromatic Adaptation Tag"). As alleged by RAH, the ICC-defined chromatic Adaptation Tag must "convert[] an XYZ colour, measured at a device's specific illumination conditions, to an XYZ colour in the PCS illumination conditions after complete adaptation." As such, RAH alleges that the Accused '444 Products infringe claims 11 and 41 of the '444 patent, in part, because of EFI's compliance with ICC Version 4.0 profiles.

78.     RAH's infringement claims are unfounded. By way of non-limiting example, RAH claims that the required tags for an ICC profile in accordance with ICC specification 4.0 include a chromatic adaptation transform as recited in claims 11 and 41, in the form of a "chromaticAdaptationTag", and therefore, the Accused '444 Products must include it. ICC specification Version 4.0, however, states that the chromatic Adaptation Tag is "[r]equired only if the chromaticity of the actual adopted white is different from that of the PCS adopted white." Thus, at best, ICC specification Version 4.0 does not support RAH's broad statement that the chromatic Adaptation Tag is required. The chromatic Adaptation Tag itself is used, according to the ICC specification Version 4.0, to "convert[] an nCIEXYZ colour relative to the actual adopted white to the nCIEXYZ colour relative to the PCS adopted white." The Accused '444 Products do not convert nCIEXYZ colour in the manner described. Therefore, for at least these reasons, the Accused '444 Products do not infringe the Asserted '444 Claims.

79.     In connection with claim 15 of the '444 patent, in the Xerox action RAH alleges that the Accused '444 Products are compliant with ICC Version 4.0 profiles, which RAH alleges requires use of the ICC-defined PRMG. RAH further alleges that the PRMG provides a standardized gamut representation for image data in coordinates which are used to map colors from an input device to output devices using an intermediate color to color transformation. Upon information and belief, RAH alleges that the ICC effectively standardized the '444 patent's gamut descriptor. Thus, RAH alleges that the claim limitation "wherein said information stored by said

memory further comprises a gamut descriptor data structure, said gamut descriptor representing a two dimensional array whose inputs are coordinates related to lightness and hue and whose outputs represent the saturation at the surface of a color gamut at said input coordinates" reads on the Accused '444 Products, in part, because of EFI's compliance with ICC Version 4.0 profiles.

80.     RAH's infringement claims regarding claim 15 are unfounded. By way of non-limiting example, Version 4.0 of the ICC Specification does not even mention PRMG. Further, Version 4.3 of the ICC Specification does not require PRMG. In Version 4.3, the ICC Specification states, under "6.3.3.1 General," that "Perceptual rendering remains a proprietary art, due both to the current state of perceptual rendering algorithms, and also to the fact that viewer and application specific preferences can affect the nature of a desired reproduction (when exact colour matching is not the objective). It is not practical or desirable to specify standard perceptual rendering algorithms. Consequently, it is also not practical or desirable to require that perceptual rendering intents match an exact perceptual intent reference medium gamut (PRMG)." Further, the ICC Specification Version 4.3 states, under "6.3.3.3 Perceptual intent reference medium gamut (PRMG)," that "Perceptual rendering intent and saturation rendering intent transforms may *optionally* use the reflection color gamut specified in ISO 12640-3 . . . ."  (emphasis added). Thus, even if RAH's unsupported allegation that using PRMG meets claim 15's requirement of using a standardized color gamut is correct, it does not follow that the Accused '444 Products' conformity with ICC Version 4.0 (or Version 4.3) profiles necessarily establishes infringement of the '444 patent, as the use of PRMG is optional. In fact, the Accused '444 Products do not implement PRMG, as RAH's infringement allegations incorrectly assume. Accordingly, RAH's infringement allegations are demonstrably wrong and, for at least this reason, the Accused '444 Products do not infringe claim 15 as RAH alleges.

81.     Accordingly, an actual controversy exists between EFI and RAH as to EFI's non-infringement of the '444 patent.

82.     Pursuant to the Declaratory Judgment Act, 28 U.S.C. §§2201, *et seq.* and to resolve the legal and factual questions raised by RAH and to afford EFI and its customers relief from uncertainty and controversy which RAH's infringement accusations have precipitated, EFI is

JMBM | Jeffer Mangels
Butler & Mitchell LLP

1    entitled to a declaration that the Asserted '444 Products do not infringe the '444 patent.

**FOURTH CLAIM FOR RELIEF**

**(Declaratory Judgment of Noninfringement of U.S. Patent No. 8,760,704)**

4    83.    EFI repeats and realleges each and every allegation contained in the preceding
5    paragraphs above as if fully set forth herein.

6    84.    RAH has alleged and continues to allege, in connection with the Xerox action, that
7    the EFI Fiery (EX) Print Server, Command WorkStation and/or Color Profiler Suite that RAH
8    accused of infringement in its infringement contentions against Xerox ("Accused '704 Products")
9    infringe certain claims of the '704 patent. Because RAH's infringement allegations regarding the
10   Accused '870 Products are based on the use, manufacture, sale, offer for sale, and importation of
11   EFI's products by EFI's customers, including Xerox, RAH effectively has charged EFI with
12   infringement and there exists a controversy between RAH and EFI as to EFI's liability for direct
13   infringement and induced infringement based on the alleged acts of direct infringement by EFI's
14   customers.

15   85.    Based on EFI's alleged use of the standard ICC profiles and reference to EFI's
16   Command Workstation, RAH alleges that the Accused '704 Products infringe independent claims
17   11 and 29, and dependent claims 12 (which depends from claim 11) and 30, 31, 34, and 35 (which
18   depend from claim 29) of the '704 patent (collectively, the "Asserted '704 Claims"). As described
19   above, RAH alleges that "This chart was prepared specifically for Xerox FreeFlow Core (On-
20   Premise and Cloud), and applies to FreeFlow Core sold as a standalone product or sold as a
21   packaged bundle with its printers and presses. In addition, other presses and software sold as a
22   bundle would infringe this patent for the same reasons as set forth in this chart (e.g., Xerox
23   printers and presses that are provided with Kodak/Creo CX Print Server, including but not limited
24   to Xerox iGen4, 700i/700 Digital Color Press, DocuColor 8080 Digital Press, Color 800/1000
25   Press; Xerox printers and presses that are provided with Xerox FreeFlow Print Server, including
26   but not limited to, Xerox Color 560/570 Printers, Color 800/1000, Color C75, Color J75, iGen4,
27   iGen 150, 700i/700 Color Digital Press, Color 800i/1000i; Xerox printers and presses that are
28   provided with Kodak/Creo CX Print Server, including but not limited to Xerox iGen4, 700i/700

Digital Color Press, DocuColor 8080 Digital Press, Color 800/1000 Press). For example, to the extent that Xerox sells its printers and presses bundled with other print servers, including Xerox FreeFlow Print Server, EFI Fiery/EX Print Server, or Kodak/Creo CX Print Server, these bundled systems would infringe this patent in a similar fashion as set forth in this chart" and "This chart was prepared specifically for the Xerox Versant 2100 Press with FreeFlow Print Server. Any other Xerox printers or presses operating in a similar fashion and bundled with similar software would infringe this patent for the same reasons as set forth in this chart (e.g., FFPS bundled with Color J75, iGen4, iGen 150, 800/1000, and 800i/1000i presses). In addition, other software sold bundled with its printers and presses may infringe. For example, to the extent that EFI Fiery print server (e.g., EX Print Server models) and Kodak Creo CX print server are sold instead of FFPS with Xerox printers and presses (e.g., EFI Fiery (EX) Print Server for Xerox Versant 2100, Color J75, iGen4, iGen 150, Color 800/1000, Color 800i/1000i; Kodak CX Print Server for Xerox iGen4, Color 800/1000), these bundled systems would infringe this patent in a similar fashion as set forth in this chart."

86.    Thus, for example, RAH alleges that "at least one of said files comprising a three-dimensional array whose inputs are device-independent color coordinates and whose output at each input coordinate indicates whether said input coordinate is either inside or outside of a color gamut" of claim 11 reads on the Accused '704 Products.  In addition, for example, RAH alleges that "at least one instrument comprising an illumination source and one or more photosensors, wherein said instrument provides measurements of colors printed by said press, said measurements enabling corrections of at least said curves controlling tonal transfer for each color channel" of claim 29 reads on the Accused '704 Products.

87.    RAH's allegations are unfounded.  In support of its allegations that the Accused '704 Products include "at least one of said files comprising a three-dimensional array . . . either inside or outside of a color gamut," RAH identifies the "gamut Tag" of ICC specification Version 4.0, which it states "uses PCS values (e.g., XYZ device independent color values) as inputs, and outputs either a zero or non-zero" to determine if an input color value is in or out-of-gamut for a device. Claim 11, however, also requires that the "information for transforming," which includes

JMBM | Jeffer Mangels
Butler & Mitchell LLP

the aforementioned "three dimensional array," is used to render color image data. The Accused '704 Products do not utilize the gamut Tag to render color image data, as RAH's infringement allegations incorrectly assume. Accordingly, RAH's infringement allegations are demonstrably wrong and, for at least this reason, the Accused '704 Products do not infringe claim 11 as RAH alleges.

88.     The Accused '704 Products also do not use color measurements to enable corrections of tonal transfer for each color channel of a press as recited in claim 29 of the '704 patent and as alleged by RAH. Therefore, for at least this reason, the Accused '704 Products do not infringe claim 29, or claims 30, 31, 34, and 35 (which depend from claim 29).

89.     Accordingly, an actual controversy exists between EFI and RAH as to EFI's non-infringement of the '704 patent.

90.     Pursuant to the Declaratory Judgment Act, 28 U.S.C. §§2201, *et seq*. and to resolve the legal and factual questions raised by RAH and to afford EFI and its customers relief from uncertainty and controversy which RAH's infringement accusations have precipitated, EFI is entitled to a declaration that the Accused '704 Products do not infringe the '704 patent.

## PRAYER FOR RELIEF

WHEREFORE, EFI prays for judgment as follows:

A.     A declaration that EFI's Accused '870 Products do not and have not infringed the '870 patent;

B.     A declaration that EFI's Accused '008 Products do not and have not infringed the '008 patent;

C.     A declaration that EFI's Accused '444 Products do not and have not infringed the '444 patent;

D.     A declaration that EFI's Accused '704 Products do not and have not infringed the '704 patent;

E.     An award of EFI's costs pursuant to Federal Rule of Civil Procedure 54;

F.     A finding that this is an exceptional case and an award to EFI of its reasonable attorney fees pursuant to 35 U.S.C. § 285; and

JMBM

Jeffer Mangels
Butler & Mitchell LLP

1          G.      Any and all other available legal and equitable relief that the Court deems just and

2    proper.

3

4    DATED:  June 21, 2019                    JEFFER MANGELS BUTLER & MITCHELL LLP

5

6                                            By: */s/ Gregory S. Cordrey*
                                             GREGORY S. CORDREY
7                                            Gcordrey@jmbm.com
                                             Jeffer Mangels Butler & Mitchell LLP
8                                            3 Park Plaza, Suite 1100
                                             Irvine, CA 92614
9                                            Telephone:  949-623-7200
                                             Facsimile:  949-623-7202
10
                                             Attorney for Plaintiff
11                                           ELECTRONICS FOR IMAGING, INC.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>DEMAND FOR JURY TRIAL</u>

Pursuant to Fed. R. Civ. P. 38(b) and Local Rule 3-6, Plaintiff EFI hereby demands a jury

trial for all claims in this action which can be tried to and before a jury.


DATED:  June 21, 2019                    JEFFER MANGELS BUTLER & MITCHELL LLP



By: */s/ Gregory S. Cordrey*
           GREGORY S. CORDREY
Attorney for Plaintiff ELECTRONICS FOR
IMAGING, INC.